NOTICE
Decision filed 08/11/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220707-U

NO. 5-22-0707

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 21-CF-1535 |
| | ) | |
| CORNELIUS D. GORDON, | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Where a review of the complete record establishes that the trial court substantially complied with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), the defendant's conviction and sentence are affirmed.

¶ 2   On December 13, 2021, the defendant was charged by information in Macon County with the following four counts in case No. 21-CF-1535: count I (armed violence), count II (armed habitual criminal), count III (unlawful possession of a controlled substance with intent to deliver), and count IV (aggravated fleeing or attempting to elude an officer). On February 9, 2022, an additional count V was filed (armed violence). The defendant also had pending case No. 21-CF-819, which charged him with residential burglary and possession of a stolen vehicle. After several court appearances where the defendant was represented by counsel, he elected to proceed *pro se*. Illinois Supreme Court Rule 401(a) admonishments were given. Multiple motion hearings were

1

held, and a jury trial commenced. The State elected to proceed only on counts II and IV in 21-CF-1535, armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2020)) and aggravated fleeing and eluding or attempting to elude an officer (625 ILCS 5/11-204.1(a)(1) (West 2020)). The jury convicted the defendant on both counts. He was sentenced to 20 years in the Illinois Department of Corrections (IDOC) on count II and 3 years IDOC on count IV, to be served concurrently. For the following reasons, we affirm the convictions and sentence.

¶ 3                                                I. Background

¶ 4       On December 14, 2021, defendant appeared in open court for his arraignment on the four-count information in 21-CF-1535 and requested time to hire an attorney. The defendant was given a copy of the information and advised of the nature of the charges. On December 28, 2021, the defendant appeared, and the public defender was appointed. A preliminary hearing was set for January 19, 2022. On that date, the defendant was in quarantine and unable to be present, so the preliminary hearing was continued to February 9, 2022.

¶ 5       On February 9, 2022, the defendant appeared with counsel. On that date, the State added count V (armed violence) (720 ILCS 5/33A-2(a), 33A-3(a) (West 2008)) to 21-CF-1535 and dismissed count I, which was the same charge under a different theory. The public defender indicated that the defendant was given a copy of count V. The preliminary hearing was held, and the trial court found probable cause. The public defender waived formal arraignment on behalf of her client. On February 28, 2022, the defendant appeared with counsel, and the case was continued. On March 28, 2022, the defendant filed a *pro se* "Motion for Discovery," a "Writ for Habeas Corpus," and a "Motion To Withdrawl [*sic*]" "Counsel for Ineffective Assistance." On April 4, 2022, defense counsel informed the court that the defendant also wrote a letter to her, indicating he wanted to proceed *pro se.*

2

¶ 6    On April 11, 2022, the defendant appeared with his attorney regarding his motion to waive counsel. The trial court began by reciting all the charges in both 21-CF-819 and 21-CF-1535, including the minimum and maximum sentences for each count. Specifically, the defendant was informed that in 21-CF-819, count I was nonprobationable, and he was extended-term eligible, making his sentencing range 4 to 30 years in IDOC. Count II was probationable, and he was extended-term eligible, with a possible sentencing range of 3 to 14 years in IDOC. The trial court stated that if convicted of both, 21-CF-819 and 21-CF-1535, it was mandatory that they be served consecutively. At this point, the assistant state's attorney reminded the trial court that counts I and III in 21-CF-1535 had been dismissed. The trial court then informed the defendant that count II was a Class X, nonprobationable offense, and he was extended-term eligible, making his sentencing range 6 to 60 years in IDOC, served at 85%. Count IV was probationable, and due to the defendant's extended-term eligibility, the sentencing range was 1 to 6 years in IDOC. The trial court continued by stating that count V was nonprobationable, and due to the defendant's extended-term eligibility the sentencing range was 15 to 60 years in IDOC. The defendant was advised of potential fines and mandatory supervisory release periods on each count in both cases.

¶ 7    The trial court then admonished the defendant on his right to counsel, appointed or hired, and his right to proceed *pro se.* The trial court inquired about the defendant's age, his highest level of education, and if he had ever proceeded *pro se* before. The defendant responded that in 2012 he proceeded on a case *pro se*. The defendant was advised of the potential dangers of proceeding *pro se* and warned that he would not receive any special treatment due to his choice. The assistant state's attorney apprised the trial court of the status of an offer for resolution in detail, and the defendant confirmed he was rejecting that offer. The defendant then asked the trial court about some discovery issues and his speedy trial rights, both of which were clearly explained. After the

3

defendant signed a "Written Waiver of Counsel" form, which mirrored Rule 401(a) admonishments, the trial court granted the defendant's request to proceed *pro se* and cautioned him again, stating he was "facing extremely serious charges." A status hearing and jury trial date were set.

¶ 8     On April 22, 2022, the defendant appeared, *pro se*, for a status hearing and indicated that discovery was complete. His request for appointment of stand-by counsel was denied. Lastly, he made a "verbal motion to dismiss for failure to prosecute in my 120 days pretrial." The trial court responded that the motion had to be in writing, and he was reminded that the jury trial was set. Another status hearing was scheduled for May 5, 2022. On that date, the defendant's written motion to dismiss was argued and denied. The defendant also recited some issues with the discovery, indicating he would file a motion to suppress. Another status hearing was set for May 24, 2022.

¶ 9     On May 24, 2022, the defendant appeared and stated he was ready for trial but had a motion to suppress with him. The trial court set another status hearing for June 7, 2022, to allow the defendant time to file any motions he wanted heard. At that next status hearing, the trial court set the defendant's motion to suppress and motion for pretrial discovery for hearing on July 12, 2022.

¶ 10    On July 12, 2022, the trial court held a hearing on the defendant's pending motions. The defendant made lengthy arguments but did not present any evidence. However, the record does show the defendant attempted to subpoena witnesses. The assistant state's attorney responded that even if the statements in defendant's motion to suppress were taken as true, because the initial traffic stop was still valid, the defendant's motion should be denied. The trial court denied the motion to suppress and found that the State was in compliance with all discovery rules. Finally, a motion to reduce bond was heard. The State noted that the defendant accurately stated the law.

4

Because there was no change of circumstances and due to the defendant's prior criminal history, the trial court denied the motion to reduce bond. Another status hearing was set for August 17, 2022.

¶ 11     On August 17, 2022, the defendant presented another "Motion to Dismiss the Charges" and made the following statement:

> "THE DEFENDANT: I have did additional research and my cases do not follow—fit the Armed Habitual Criminal Act because a—my Unlawful Possession of a Weapon is not an aggravated unlawful of weapon. But I have been charged with a drug charge, but I haven't been charged more than two times. So, therefore, to be charged under the Armed Habitual Act they say you have to have two or more charges. I only got one charge on there that fits the criteria of armed habitual."

The trial court also heard a "Motion for Bill of Particulars" where the defendant claimed the State did not produce adequate information on the armed habitual criminal statute so that he could adequately defend himself. The following exchange occurred:

> "THE COURT: *** What is it that you don't understand in the charge?
>
> THE DEFENDANT: First of all, I don't understand how I'm being charged with Armed Habitual when the weapon was never found on me. Also, as I stated that, my DNA or fingerprints not on there. And that they found the weapon on the side of the passenger, whom they failed a—to even a—arrest or do anything towards him.
>
> THE COURT: Okay. Then as to the Motion for Bill of Particulars I am going to deny that. What you're, basically, arguing is an evidentiary issue and understand

what you're stating. That really is not a Motion for Bill of Particulars. That is discretionary with the Court.

If you don't understand what you're charged with that's one thing. I think you understand what you charged with. You're saying there's evidentiary issues and that will come up in the jury trial. So, as to that I am going to deny the Motion for Bill of Particulars."

¶ 12     On August 19, 2022, the trial court held another status hearing where the defendant asserted he had "extensively" researched the armed habitual criminal statute and repeated his concerns with the charge.

¶ 13     On August 22, 2022, the jury trial commenced. Outside the presence of the jury, the State provided the defendant with a copy of the statute defining the offense of armed habitual criminal, and the trial court explained to the defendant how his prior convictions fit the criteria of the statute. The State then moved to dismiss count V, electing to proceed only on counts II and IV. The trial court again inquired about the status of an offer, which the defendant refused, stating: "if they not talking about probation sir, no sir." The jury trial proceeded over the course of two days, during which the defendant made numerous objections and arguments as a *pro se* litigant. At the conclusion of the jury trial, the defendant was convicted of both counts.

¶ 14     On October 13, 2022, the trial court heard arguments on the defendant's posttrial motions: "Motion for a New Trial," "Motion for Judgment of Acquittal," "Motion to Arrest Judgment," and "Motion to Dismiss Charges," which motions included caselaw. The court denied all the motions and proceeded to sentencing.

¶15     A presentence investigation report (PSI) was submitted to the trial court, which included the defendant's prior criminal history. The PSI detailed five prior felony convictions, which

6

resulted in the defendant being sentenced to a decade or more of imprisonment, and an extensive list of misdemeanors and probation violations. The trial court sentenced the defendant to concurrent sentences of 20 years in IDOC on count II and 3 years in IDOC on count IV. The defendant filed a timely notice of appeal.

¶ 16                                         II. Analysis

¶ 17     The defendant argues that the trial court admonishments at the time he waived his right to counsel failed to comply with Illinois Supreme Court Rule 401(a).

¶ 18     "The sixth amendment to the United States Constitution (U.S. Const., amend VI) guarantees an accused in a criminal proceeding both the right to the assistance of counsel and the correlative right to proceed without counsel." *People v. Wright*, 2017 IL 119561, ¶ 39. Because the right of self-representation is as basic and fundamental as the right to counsel, defendant may waive his constitutional right to counsel as long as that waiver is voluntary, knowing, and intelligent. *People v. Haynes*, 174 Ill. 2d 204, 235 (1996). Illinois Supreme Court Rule 401(a) sets forth the required admonishments for waiver of counsel. "[T]he interpretation of a supreme court rule is a question of law that we review *de novo*." *People v. Campbell*, 224 Ill. 2d 80, 84 (2006).

¶ 19     Illinois Supreme Court Rule 401(a) provides:

>      "(a) Waiver of Counsel. Any waiver of counsel shall be in open court. The court
> 
> shall not permit a waiver of counsel by a person accused of an offense punishable
> 
> by imprisonment without first, by addressing the defendant personally in open
> 
> court, informing him of and determining that he understands the following:
> 
>           (1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel, and if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984). Strict compliance with Rule 401(a) is not required. "[S]ubstantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was otherwise made knowingly, intelligently, and voluntarily, and the admonishments the defendant received did not prejudice his rights." *People v. Jiles*, 364 Ill. App. 3d 320, 329 (2006). A reviewing court will look "to the overall context of the proceedings, including the defendant's conduct following the defendant's request to represent himself." (Internal quotation marks omitted.) *People v. Ware,* 407 Ill. App. 3d 315, 340 (2011).

¶ 20     The defendant argues that on April 11, 2022, when he waived counsel, the trial court simply read the counts in the information without any further explanation of the nature of the charges. In support of his argument, the defendant relies on *People v. Jiles*, which notes that "Rule 401(a) admonishments must be provided at the time the court learns that a defendant chooses to waive counsel, so that the defendant can consider the ramifications of such a decision." *Jiles*, 364 Ill. App. 3d at 329. However, the court in *Jiles* also noted that "substantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was otherwise made knowingly, intelligently, and voluntarily, and the admonishments the defendant received did not prejudice his rights." *Id*. The right to waive counsel is fundamental, and because of the gravity of the circumstance, each case "must be evaluated on its own particular set of facts." *Wright*, 2017 IL 119561, ¶ 54.

¶ 21    The docket entry dated December 14, 2021, which was the defendant's first appearance, states: "Defendant present in custody, tendered copy of the Information, and advised as to the nature of the charges and possible penalties." When reviewing a docket entry, "[w]e must presume the common-law record is correct." *People v. Martinez*, 361 Ill. App. 3d 424, 427 (2005); see *People v. Durr*, 215 Ill. 2d 283, 306 (2005) ("the common law record imports verity and is presumed correct"). Only where a conflict between the common-law record and report of proceedings exists will the report of proceedings prevail. *Id*. Here, similar to *Martinez*, there is no report of proceedings for the December 14, 2021, court appearance. Accordingly, we must presume that the common-law record is correct. Therefore, we find that the defendant was adequately admonished of the nature of the charges and possible penalties on December 14, 2021. Additionally, on February 9, 2022, the defendant was present and heard extensive testimony during the preliminary hearing. On that same date, the defendant was handed a copy of the amended information, which added count V. On March 28, 2022, the defendant began filing his *pro se* motions and ultimately waived his right to counsel on April 11, 2022. The defendant also cogently argued several motions, before ultimately proceeding to a jury trial *pro se.*

¶ 22    "Substantial compliance occurs when any failure to fully provide admonishments does not prejudice defendant because either: (1) the absence of a detail from the admonishments did not impede defendant from giving a knowing and intelligent waiver or (2) defendant possessed a degree of knowledge or sophistication that excused the lack of admonition." *People v. Pike*, 2016 IL App (1st) 122626, ¶ 112. An otherwise inadequate admonition may be constitutionally sufficient, and therefore does not constitute error, if the absence of a detail did not impede the defendant from giving a knowing and intelligent waiver. *People v. Black*, 2011 IL App (5th) 080089, ¶ 20. In deciding whether a defendant's waiver of counsel was valid, the dispositive issue

9

is whether the waiver of counsel was made knowingly, understandingly, and effectively in light of the entire record. *People v. Gilkey*, 263 Ill. App. 3d 706, 711 (1994).

¶ 23    Here, the defendant actively participated in 13 *pro se* pretrial hearings and never wavered on his desire to represent himself. The only reasons even given by the defendant for his desire to represent himself were related to his speedy trial rights and the lack of a probation offer. The defendant filed 12 *pro se* pretrial and 9 *pro se* posttrial motions, argued them all, and referenced his "extensive research" with respect to the motions. Given the defendant's lengthy criminal history and his prior *pro se* experience, coupled with his *pro se* experience here, we find that the defendant's familiarity with the legal process establishes that the defendant possessed the degree of knowledge or sophistication that excused the lack of a complete Rule 401(a) admonishment by the trial court. *Pike*, 2016 IL App (1st) 122626, ¶ 112. Accordingly, after reviewing the entire record, we conclude that the trial court substantially complied with Rule 401(a).

¶ 24    The defendant next argues that the trial court's admonishments were insufficient to satisfy Rule 401(a) because the defendant was incorrectly advised that the maximum sentence he could receive on the armed habitual criminal charge (count II) was 60 years. The defendant maintains that because the State used the defendant's prior felony conviction as a predicate offense for the charge of armed habitual criminal, it was precluded from using that same conviction to impose an extended-term sentence. Therefore, the maximum sentence for count II was 30 years, not 60. However, the defendant was admonished that the maximum sentence he could receive on count V (armed violence) was 60 years. We find *People v. Coleman*, 129 Ill. 2d 321 (1989), and *People v. Johnson*, 119 Ill. 2d 119 (1987), to be instructive. The court in *People v. Coleman* reasoned that: "Where a defendant knows the nature of the charges against him and understands that as a result of those charges he may receive the death penalty, his knowledge and understanding that he may

10

be eligible to receive a lesser sentence pales in comparison." *Coleman*, 129 Ill. 2d at 334. Likewise, in *People v. Johnson*, the court upheld a waiver of counsel and found substantial compliance with Rule 401(a) despite the fact that the trial court failed to specifically advise the defendant that he faced a mandatory minimum sentence of life imprisonment. *Johnson*, 119 Ill. 2d at 131-32. Here, as in *Coleman* and *Johnson*, the erroneous sentencing admonishment did not invalidate the defendant's waiver of counsel. Analogously, the defendant was fully aware that the sentencing range for armed violence (count V) was substantially longer than the sentencing range he faced for armed habitual criminal (count II). Given that, the importance of the defendant having specific knowledge that the maximum sentence he faced for armed habitual criminal (count II) was 30 years less than the maximum sentence he faced in count V clearly "pales in comparison." *Coleman*, 129 Ill. 2d at 334. Accordingly, we find that the trial court's admonishments, despite the incorrect sentencing range for armed habitual criminal, substantially complied with Rule 401(a).

¶ 25                                  III. Conclusion

¶ 26    For the above reasons, we find that the trial court substantially complied with Illinois Supreme Court Rule 401(a). Accordingly, the defendant's conviction and sentence are affirmed.

¶ 27    Affirmed.

11