NOTICE
Decision filed 11/07/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240359-U

NO. 5-24-0359

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 21-CF-1535 |
| | ) | |
| CORNELIUS D. GORDON, | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Cates and Boie concurred in the judgment and opinion.

**ORDER**

¶ 1    *Held*:    Defendant failed to establish that the armed habitual criminal statute was facially unconstitutional under the United States Constitution.

¶ 2    Following a jury trial in the circuit court of Macon County, defendant, Cornelius D. Gordon, was found guilty of armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2020)) and aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(1) (West 2020)) and sentenced to 20 years in prison. Defendant appeals from the trial court's first-stage dismissal of his postconviction petition, arguing, for the first time on appeal, that the armed habitual criminal statute facially violates his second amendment right to carry a handgun under the United States Constitution (U.S. Const., amend. II) following the United States Supreme Court's decision in

1

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). For the following reasons, we affirm.

¶ 3                               I. Background

¶ 4     We recite only those facts relevant to the issue on appeal, provided defendant's previous appeal set forth in great length the details of defendant's case. See *People v. Gordon*, 2023 IL App (5th) 220707-U.

¶ 5     On December 13, 2021, the State charged defendant by four-count information with armed violence (720 ILCS 5/33A-2(a), A-3(a) (West 2020)) (count I), a Class X felony; armed habitual criminal (*id.* § 24-1.7(a) (count II), a Class X felony; unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2020)) (count III), a Class 1 felony; and aggravated fleeing or attempting to elude an officer (625 ILCS 5/11-204.1(a)(1) (West 2020)) (count IV)), a Class 4 felony. In support, the State alleged that "while armed with a dangerous weapon, a Ruger .45 caliber firearm," defendant, a person previously convicted of the offenses of unlawful possession of a controlled substance with intent to deliver (case No. 07-CF-74) and unlawful possession of a weapon by a felon (case No. 12-CF-1085) in Macon County, Illinois, knowingly and unlawfully possessed a firearm and one or more grams but less than 15 grams of a substance containing cocaine, a controlled substance. Moreover, the State alleged that, after police gave defendant visual and audio signals directing him to stop his vehicle, defendant willfully failed to obey, driving his vehicle at a rate of speed at least 21 miles per hour over the legal speed limit. The State filed an additional count of armed violence (720 ILCS 5/33A-2(a), A-3(a) (West 2020)) (count V), a Class X felony, on February 9, 2022, alleging that defendant, while armed with a Ruger .45 caliber firearm, fled or attempted to elude police in his vehicle, despite police directing

defendant to bring his vehicle to a stop. Defendant willfully failed to obey such direction, and instead, drove at a rate of speed at least 21 miles per hour over the posted speed limit.

¶ 6    On March 28, 2022, defendant filed a *pro se* motion alleging ineffective assistance of counsel. Defendant requested to waive his right to counsel and proceed *pro se* to trial. Following a hearing on April 11, 2022, the trial court accepted defendant's waiver of counsel, allowing him to proceed *pro se* to trial.

¶ 7    At defendant's trial held on August 22 and 23, 2022, the jury heard evidence that police officers attempted to stop defendant's vehicle on December 9, 2021, at approximately 3:50 p.m. for a traffic violation. When an officer exited his vehicle to make contact with the occupants of the vehicle, the officer noticed movement in the vehicle as he approached. Defendant quickly reversed his vehicle at a high rate of speed towards the officer, which prompted a police pursuit. Officers subsequently pursued defendant's vehicle with their emergency lights and sirens on, at which time defendant proceeded to disobey traffic laws and travel at a high rate of speed of 21 miles per hour or more over the legal speed limit. Defendant eventually crashed his vehicle, at which time officers ordered the occupants—defendant and a 17-year-old male—out of the vehicle. Police subsequently placed defendant under arrest and searched the vehicle, finding a loaded Ruger .45 caliber firearm on the passenger side floorboard. Officers also discovered and obtained a cell phone in the vehicle with a picture of defendant on the screen. Following the execution of a search warrant, officers obtained a photograph from defendant's phone showing an image of the same make and model of the firearm seized from defendant's vehicle. The State elected to proceed on counts II (armed habitual criminal) and IV (aggravated fleeing or attempting to elude a peace officer) only. After considering the evidence, the jury found defendant guilty of counts II and IV.

¶ 8    The presentence investigation report (PSI) demonstrated that defendant was 41 years old and on parole from the Illinois Department of Corrections (IDOC) at the time of the incident at issue. Aside from defendant's extensive juvenile criminal history, his adult criminal history included five prior felony convictions, which resulted in the court sentencing defendant to a decade or more of imprisonment, as well as several misdemeanor convictions and probational violations. According to defendant's PSI, he was diagnosed with schizophrenia and explosive disorder around age 10 and began using marijuana around age 12. Since his most recent release from IDOC, he reported taking ecstasy and Vicodin " 'every few days.' "

¶ 9    On April 27, 2023, the trial court sentenced defendant to concurrent sentences of 20 years in prison on count II and 3 years on count IV. Defendant appealed, and this court affirmed defendant's conviction and sentence. See *Gordon*, 2023 IL App (5th) 220707-U, ¶ 26. Defendant subsequently filed a petition for leave to appeal, which the Illinois Supreme Court denied on November 29, 2023.

¶ 10    On January 2, 2024, defendant filed a *pro se* postconviction petition, alleging numerous constitutional violations against him, including his right to speedy trial, impartial jury, and to confront witnesses against him. Defendant also challenged the sufficiency of the evidence and alleged his due process rights were violated, claiming innocence and that he did not fit the criteria of the charges. In addition, defendant alleged that the armed habitual criminal conviction subjected him to an improper double enhancement and that the armed habitual criminal statute was "unconstitutionally vague as applied."

¶ 11    On February 23, 2024, the trial court issued an order summarily dismissing defendant's *pro se* postconviction petition, finding that defendant failed to state a gist of a constitutional claim

4

and concluding that his petition was frivolous and patently without merit. Defendant filed a timely notice of appeal.[1]

¶ 12                                              II. Analysis

¶ 13     Relying on the Supreme Court's decision in *Bruen*, defendant argues for the first time on appeal that the armed habitual criminal statute violates the second amendment to the U.S. Constitution on its face. According to defendant, "irrespective of his prior [felony] convictions," he is part of "the people" to whom the second amendment protects. Defendant further argues that, provided "a felon's possession of a handgun is presumptively protected under the Second Amendment," the armed habitual criminal statute is inconsistent with the nation's historical tradition of firearm regulation, where the statute serves as "a categorical and permanent ban that violates the right of Americans to possess a handgun under the Second Amendment." We cannot agree.

¶ 14     Initially, we note that defendant did not raise this issue in his *pro se* postconviction petition. Generally, where a defendant fails to raise an issue in a postconviction petition, the defendant may not raise an issue for the first time on review from a dismissal of the petition. *People v. Jones*, 211 Ill. 2d 140, 148 (2004). Despite defendant's failure to attack the constitutionality of the armed habitual criminal statute in his *pro se* postconviction petition, we recognize that a party may facially attack a statute's constitutionality on appeal even if the party did not raise the issue in the trial court. *People v. Thompson*, 2015 IL 118151, ¶ 32; *People v. Davis*, 2014 IL 115595, ¶ 26. Therefore, we address the merits of defendant's argument.

---

[1]This court allowed the State's motion to cite additional authority during the pendency of this appeal. The State filed a motion for leave to cite *People v. Thompson*, 2025 IL 129965 as additional authority on July 1, 2025, and we took the motion with the case. We now grant the State's motion.

5

¶ 15    "All statutes are presumed to be constitutional" (*People v. Funches*, 212 Ill. 2d 334, 339 (2004)), and a party challenging the constitutionality of the statute " 'carr[ies] the heavy burden of successfully rebutting the strong judicial presumption that statutes are constitutional.' " *People v. Rizzo*, 2016 IL 118599, ¶ 23. "A facial challenge requires a showing that the statute is unconstitutional under any set of facts, *i.e.*, the specific facts related to the challenging party are irrelevant." *Thompson*, 2015 IL 118151, ¶ 36. "Successfully making a facial challenge to a statute's constitutionality is extremely difficult, requiring a showing that the statute would be invalid under *any* imaginable set of circumstances. The invalidity of the statute in one particular set of circumstances is insufficient to prove its facial invalidity." (Emphasis in original.) *In re M.T.*, 221 Ill. 2d 517, 536-37 (2006). " '[S]o long as there exists a situation in which a statute could be validly applied, a facial challenge must fail.' " *People v. Huddleston*, 212 Ill. 2d 107, 145 (2004) (quoting *Hill v. Cowan*, 202 Ill. 2d 151, 157 (2002)). Whether a statute is unconstitutional is a question of law, which we review *de novo*. *Davis*, 2014 IL 115595, ¶ 26.

¶ 16    The second amendment to the U.S. Constitution provides as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. "The United States Supreme Court has 'recognized that the Second and Fourteenth Amendments [(U.S. Const., amends. II, XIV)] protect the right of an ordinary, law-abiding citizen to possess a handgun' inside and outside the home 'for self-defense.' " *People v. Burns*, 2024 IL App (4th) 230428, ¶ 14 (quoting *Bruen*, 597 U.S. at 8-9; *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008); *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010)). In *Bruen*, the Supreme Court set out the following two-part test for determining whether laws regulating conduct protected by the second amendment were valid under the constitution:

6

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Bruen*, 597 U.S. at 24.

Illinois courts have concluded that "the two-part process requires us to determine (1) whether defendant's conduct falls within the plain text of the second amendment and, if so, (2) whether there is a justification for the regulation rooted in history and tradition." *People v. Travis*, 2024 IL App (3d) 230113, ¶ 24.

¶ 17 In *United States v. Rahimi*, 602 U.S. 680 (2024), the Supreme Court considered the analytical framework for second amendment claims following its decision in *Bruen*. In applying that analytical framework, the Supreme Court upheld a firearm restriction against an individual with a domestic violence restraining order. *Id.* at 699-700. The individual subject to the restraining order was found to pose " 'a credible threat to the physical safety' " of his girlfriend and child. *Id.* at 688-89. The Supreme Court conducted a historical analysis to assess whether the firearm restriction was permissible. *Id.* at 693-700. The Supreme Court ultimately found the restriction constitutional but rejected the government's argument that the individual was not protected under the second amendment because he was not " 'responsible[,]' " holding that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 701-02.

¶ 18 This court recently applied *Bruen* in considering a defendant's facial second amendment challenge to the unlawful use of a weapon by a felon (UUWF) statute (720 ILCS 5/24-1.1(a) (West 2022)). *People v. Stephens*, 2024 IL App (5th) 220828. In addressing the State's arguments that

7

the defendant was not covered by the plain text of the second amendment and that convicted felons fell outside the coverage of the second amendment because they were not law-abiding, responsible persons (*id.* ¶ 33), this court acknowledged that several other districts of the appellate court determined that "the protections afforded by the second amendment apply only to law-abiding citizens." *Id.* ¶ 28 (citing *People v. Kelley*, 2024 IL App (1st) 230569, ¶ 22; *People v. Mobley*, 2023 IL App (1st) 221264, ¶¶ 27-28 ("*Bruen* strongly suggests the test only applies when a regulation impacts a law-abiding citizen's ability to keep and bear arms"); *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 (noting that the *Bruen* majority and concurrences repeated the phrase "law-abiding" 18 times); *People v. Burns*, 2015 IL 117387, ¶ 41 (Garman, C.J., specially concurring, joined by Thomas, J.) ("the right secured by the second amendment is held by 'law-abiding, responsible citizens' and is not unlimited" (quoting *Heller*, 554 U.S. at 635)). This court noted, however, that a different panel from the First District held that felons were not excluded by the plain language of the second amendment under the first prong of *Bruen* and that a defendant's felony conviction should be evaluated under the historical tradition analysis set out in the second prong of *Bruen*. *Stephens*, 2024 IL App (5th) 220828, ¶ 29 (citing *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 89, *pet. For leave to appeal pending*, No. 130153 (filed Oct. 30, 2023); *Travis*, 2024 IL App (3d) 230113, ¶ 26)).

¶ 19    This court further noted that federal courts were split on "whether the phrase 'the people' as used in the second amendment categorically exclude[d] felons." *Stephens*, 2024 IL App (5th) 220828, ¶ 30 (citing *United States v. Head*, 734 F. Supp. 3d 806, 814-15 (N.D. Ill. 2024)). This court recognized that some federal courts assumed, without deciding, that felons were among "the people" and proceeded to the second prong of the *Bruen* analysis (*United States v. Stringer*, 742 F. Supp. 3d 840, 852-53 (C.D. Ill. 2024); *United States v. Wigfall*, 677 F. Supp. 3d 791, 796 (N.D.

Ind. 2023)), while other federal courts found that felons were not protected under the plain text of the second amendment (*Stephens*, 2024 IL App (5th) 220828, ¶ 30 (citing United *States v. McKay*, No. 23 CR 443, 2024 WL 1767605, at *2 (N.D. Ill. Apr. 24, 2024), and *United States v. Hall*, No. 22 CR 665, 2023 WL 8004291, at *2 (N.D. Ill. Nov. 17, 2023))). This court noted that other federal courts determined that felons were protected under the plain text of the second amendment. *Id.* (citing *United States v. Ware*, 673 F. Supp. 3d 947, 956 (S.D. Ill. 2023), and *United States v. Agee*, No. 1:21-CR-00350-1, 2023 WL 6443924, at *4 (N.D. Ill. Oct. 3, 2023)).

¶ 20    This court followed the reasoning of the federal court's decision in *Ware* and concluded that the defendant, despite his status as a felon, fell "into the category of 'the people' protected by the second amendment." *Id.* ¶ 33. However, this court noted that "the defendant's status as a felon [was not] irrelevant; rather, it [was] more properly evaluated under the second prong of the *Bruen* analysis." This court ultimately concluded "that section 24-1.1(a) [was] consistent with this nation's historical tradition of firearm regulation" and held that the statute was constitutional on its face under the second amendment. *Id.* ¶ 39.

¶ 21    We respectfully disagree with the portion of *Stephens* holding that felons fall "into the category of 'the people' protected by the second amendment." *Id.* ¶ 33. Instead, we follow our recent decision in *People v. Smith*, 2015 IL App (5th) 230656, ¶ 25. In *Stephens*, the defendant was not considered a "felon" at the time the State charged him with one count of armed violence with the predicated felony of possession of a controlled substance. *Stephens*, 2024 IL App (5th) 220828, ¶¶ 3, 25. Despite this difference, this court concluded that the federal court decisions holding that a felon is not a law-abiding citizen protected under the second amendment extend to a defendant who is in the process of committing a felony while simultaneously possessing an operational firearm. *Id.* ¶ 25 (citing *McKay*, 2024 WL 1767605, at *3; *Hall*, 2023 WL 8004291, at

9

*2-4; *Kelley*, 2024 IL App (1st) 230569, ¶ 22; *Mobley*, 2023 IL App (1st) 221264, ¶¶ 27-28; *Baker*, 2023 IL App (1st) 220328, ¶ 37; *People v. Arrington*, 2025 IL App (5th) 230344-U, ¶ 43).

¶ 22 Here, the armed habitual criminal statute provides, in pertinent part, that a "person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses or transfers any firearm after having been convicted a total of 2 or more times of any combination" of certain enumerated offenses. 720 ILCS 5/24-1.7(a) (West 2020). As the statute explicitly states, a prerequisite to a conviction for being an armed habitual criminal is two prior qualifying felonies. See *People v. Gray*, 2024 IL 127815, ¶ 22. It is undisputed that this statute applies to defendant— a convicted felon—given defendant was previously convicted of unlawful possession of a weapon by a felon and unlawful possession of a controlled substance with intent to deliver. See 720 ILCS 5/24-1.7(a)(2), (3) (West 2020). In the instant case, defendant committed the offenses at issue while armed with a Ruger .45 caliber firearm. As such, defendant is not a law-abiding citizen and thus not protected under the second amendment. In light of our holding that defendant is not a law-abiding citizen who is protected under the second amendment, we need not address the second step of the analysis in *Bruen*. Accordingly, for the reasons discussed, we reject defendant's argument that the armed habitual criminal statute violates the second amendment to the U.S. Constitution on its face.

¶ 23                                     III. Conclusion

¶ 24 For the foregoing reasons, we affirm the judgment of the circuit court of Macon County.


¶ 25 Affirmed.